UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| 1st SOURCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 3:16CV708-PPS |
| | ) |
| ZERTECK, INC., d/b/a Boat-N-RV Warehouse, | ) |
| TILDEN RECREATIONAL VEHICLES, INC., | ) |
| d/b/a/ Boat-N-RV Superstore, | ) |
| RIDGELAND RECREATIONAL VEHICLES, INC., | ) |
| d/b/a Boat-N-RV Megastore, | ) |
| CROSSVILLE BNRV SALES, LLC, | ) |
| d/b/a Boat-N-RV Supercenter, | ) |
| GA BNRV SALES, LLC, | ) |
| d/b/a Factory Direct Marine & RV, | ) |
| FLORIDA BNRV SALES, LLC, | ) |
| d/b/a Factory Direct Marine & RV, and | ) |
| M&T BANK CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff 1st Source Bank was a regular lender to Evergreen Recreational Vehicle LLC which manufactured RVs. Defendant BNRV is a consortium of six related boat and RV dealerships located in six states. Although each of the dealerships that make up BNRV has been sued individually in this case, we can treat them as one entity and simply refer to them together as BNRV for purposes of the present motion. Defendant M&T Bank was BNRV's "floor plan lender," regularly financing the purchase of inventory for the dealerships.

In the waning days of Evergreen — it is now a defunct entity — it delivered 21 RVs to BNRV which accepted the vehicles and then promptly stiffed Evergreen on the

bill. 1st Source Bank claims it has a "first priority blanket security interest" in all of Evergreen's assets, including its accounts receivables. So it is seeking the $808,663.00 it says Evergreen is owed for the 21 RVs.

Count I of the first amended complaint is 1st Source's claim of "account stated" against BNRV for the $808,663.00. Count II is a breach of contract claim against BNRV. Count III is a claim of promissory estoppel against M&T Bank. Counts IV and V are both conversion claims — Count IV against BNRV and Count V against M&T Bank. In what the defendants first called "counterclaims" but now say are affirmative defenses,[1] BNRV asserts claims for offsets against any amounts owed to Evergreen or 1st Source. The claimed offsets include amounts relating to rebate plans BNRV say were in effect with Evergreen, as well as claims relating to warranty repairs and BNRV's out-of-pocket costs to purchase warranties to replace the manufacturer's warranty after Evergreen's closure.

Now before me are fully briefed motions for summary judgment from all three sides – 1st Source, BNRV, and M&T Bank. Summary judgment can be granted only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018). "When reviewing cross-motions for summary judgment, 'all reasonable inferences are

---

[1] BNRV acknowledges its set-off defenses were "mistakenly labeled as 'Counterclaims'" and asks that they be treated as defenses pursuant to Fed.R.Civ.P. 8(c)(2). That request is granted.

drawn in favor of the party against whom the motion at issue was made.'" *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018).

**Undisputed Facts**

Evergreen, headquartered in Elkhart, Indiana, was a manufacturer of recreational vehicles until June 2016. [DE 55-1 at ¶4.] In 2009, 1st Source and Evergreen executed a Loan and Security Agreement in which Evergreen granted 1st Source a "'blanket' security interest" in all of Evergreen's assets. The blanket security interest is about as broad as one could imagine. It includes all accounts ("including rights to payment of money arising from the sale of property"), chattel paper, invoices, contracts, claims, documents of title, inventory, equipment, motor vehicles, and all other goods and personal property and interests in goods and personal property, "whether now owned or existing or hereafter acquired or arising." [DE 55-3 at 1.]  Evergreen regularly sold recreational vehicles to BNRV. [DE 55-1 at ¶7.] ] Derwood "Don" Littlefield is BNRV's sole owner and president. [DE 55-4 at 7.] In April and May of 2016, Littleton approved orders for 21 RVs from Evergreen. [DE 55-5 at 343-676; DE 30 at 10-11.][2] These 21 RVs were delivered to BNRV locations but have not been paid for. [DE 55-4 at 22.] The total invoice price of these vehicles is $808,663 [DE 55-5 at 289-91, 307], and there is no dispute over these invoices. [DE 55-6 at 15, 17.] The vehicles were delivered with Certificates of Origin, none of which identified a lien or other assignment held by 1st

---

[2] When citing a deposition transcript, I will cite to the page number of the ECF electronically filed document, rather than to the internal deposition page number.

Source. [DE 60 at 3; DE 64 at 2.] 1st Source does not have any financing statements showing a perfected security interest in any of those 21 RVs, effective as of the time of their delivery to BNRV. [DE 60 at 4; DE 64 at 2.]

As of October 25, 2017, BNRV had sold 16 of the 21 RVs. [DE 55-6 at 26; DE 55-4 at 22-23.] Yet BNRV has failed to pay for the 21 RVs delivered by Evergreen. [DE 55-1 at ¶9; DE 55-4 at 22.] As of September 2, 2016, when this suit was filed, Evergreen's account with BNRV reflected $808,663.00 owed. [*Id*. at ¶10.]

On August 29, 2016, Evergreen executed an Assignment of Claims in favor of 1st Source, assigning to 1st Source all of Evergreen's claims against M&T Bank relating to BNRV's failure to pay for the 21 recreational vehicles. [DE 55-1 at ¶11; DE 55-7 at 1-2.]

As noted above, M&T Bank is BNRV's floor plan lender. [DE 55-4 at 9.] This means that BNRV has a line of credit with M&T Bank of approximately $36 million that can be used to finance BNRV's purchase of inventory for its various retail locations. [DE 55-4 at 9; DE 55-5 at 22-24.] M&T has its own a blanket security interest in all BNRV inventory, furniture, fixtures, and receivables. [DE 55-5 at 39-40.]

When BNRV wants to purchase an RV using the floor plan, the manufacturer sends BNRV an invoice, which is called a "confirmation." [DE 55-4 at 10.] Don Littlefield reviews the confirmation to confirm the model of the RV, the price, and the location to which the vehicle is to be delivered. [*Id*.] Littlefield then emails the confirmation to M&T Bank to have it approved. [*Id.* at 11; DE 55-5 at 30-31.] Littlefield describes this as "sending them notice that I need the approval to floor plan the units."

4

[DE 55-4 at 12.] The next step is approval by M&T Bank, which is "a[n] e-mail from them saying that [BNRV] [has] enough money on the line that [BNRV] can purchase it." [DE 55-4 at 12.] A copy of M&T Bank's approval is typically provided to the manufacturer as well as to BNRV. [*Id.*] Then the "units are shipped," meaning the new RVs along with their Certificates of Origin are delivered to the specified dealer location. [*Id*. at 13, 28.]

Herschel Gornbein works for M&T Bank as a Relationship Manager and Vice President, in the group called Dealer Commercial Services (previously called Auto Floor Plan). [DE 55-5 at 13-14.] Gornbein testified that the bank tracks those approvals as orders by BNRV from the manufacturer. [DE 55-5 at 117-119.]

In BNRV's course of dealing with Evergreen and M&T Bank, Littlefield understood that Evergreen's "normal conduct" was to ship vehicles to the indicated dealership once it received the approval from M&T Bank. [DE 55-4 at 28.] Littlefield is unaware of any further or additional correspondence affirming BNRV's agreement to purchase an RV or constituting BNRV's directive to deliver an RV to its dealer. [DE 55-4 at 33-34.]

Once Littlefield receives notice from the dealership that a new floor plan RV has been delivered and inspected, Littlefield contacts the accounting office to initiate the payment process for the RV. [DE 55-4 at 15.] M&T Bank then pays the manufacturer and BNRV begins accruing and paying to M&T Bank monthly interest on the RV as it sits on BNRV's lot. [DE 55-4 at 19-20.] After the vehicle is sold and BNRV receives

payment from the buyer, BNRV repays M&T Bank for the purchase price of the vehicle. [DE 55-4 at 19; DE 55-5 at 48-49.] The Certificate of Origin is used to obtain a title in the name of the buyer. [DE 55-4 at 21-22.]

BNRV terminated its dealer relationships with Evergreen by letter dated June 8, 2016. [DE 23-1 at ¶8.] In a June 8, 2016 telephone conversation, Herschel Gornbein of M&T Bank was told by BNRV's General Counsel Thomas Shields not to release any funds to Evergreen without the consent of Shields or Littlefield. [DE 55-5 at 109-110.] The directive was confirmed by an email from Shields to Gornbein that same day, advising that "[BNRV] has terminated all of its dealer agreements with Evergreen RV" and "[t]he Bank should not release any funds to Evergreen RV without the written consent" of Shields or Littlefield. [DE 55-5 at 269.]

On July 25, 2016, counsel for 1st Source Bank served on BNRV and on M&T Bank a demand for payment, invoking 1st Source's security interest in all assets of Evergreen, and asserting that any amounts owed to Evergreen must be made payable to and delivered to 1st Source to satisfy a debt of $808,663.00 owed to Evergreen for RVs delivered to BNRV. [DE 55-5 at 307.] The demand letter was supported by a July 22, 2016 memo by counsel for Evergreen, affirming the security interest and the amount owed for the RVs delivered to BNRV. [DE 55-5 at 313.]

**Summary Judgment Analysis – 1st Source v. BNRV**

Foundational to all counts of the first amended complaint is 1st Source's standing to assert any claims relating to the 21 RVs. 1st Source's rights in this regard, if any,

derive either from its claim of a blanket security interest granted by Evergreen in 2009, or from an Assignment of Claims executed by Evergreen in August 2016. Since the Assignment by its terms is confined to claims against M&T Bank, 1st Source relies only on the security interest to bring its claims against BNRV.

BNRV challenges 1st Source's standing to bring claims as a secured creditor of Evergreen by questioning whether 1st Source's security interest was ever perfected. They point out that 1st Source offers no evidence that the RVs were delivered to BNRV with any notices of lien reflecting 1st Source's security interest, and argue that circumstance means the RVs were "sold out of trust," and that the delivery of the vehicles to BNRV in the ordinary course was free of any security interest of 1st Source under I.C. §26-1-9.1-320. [DE 65 at 7.] 1st Source has not responded to this argument. BNRV and M&T also point out that 1st Source has offered no evidence of the filing of a financing statement that would have perfected the security interest it claims in the RVs. 1st Source has not responded to this argument either.

On this record, I can't determine that 1st Source has an enforceable security interest in the 21 RVs that gives it standing to pursue claims against BNRV and M&T for what 1st Source contends Evergreen was owed for the RVs. On this basis, I will deny 1st Source's motion for summary judgment in its entirety.

Even if this global issue were surmounted, I can identify other material issues of fact on the merits of the case. Both in opposition to 1st Source's motion and in support of its own motion for summary judgment, BNRV repeatedly invokes its claims that

7

Evergreen owed it for rebates and for warranty-related expenses, and for conduct that reduced the value of the RVs Evergreen had sold to BNRV. The claim of account stated in Count I requires an agreed final accounting between the parties as to an amount owed. *B.E.I., Inc. v. Newcomer Lumber & Supply Co., Inc.*, 745 N.E.2d 233, 236-37 (Ind.Ct.App. 2001). BNRV's contentions about rebates and warranty-related amounts owed to it by Evergreen indicate that there exists no such agreed final adjusted balance.

What's more, the parties disagree as to whether 1st Source is subject to or immune from such arguments for set-off. On this point, each party cites various Uniform Commercial Code provisions without helpful discussion, and without including responsive analysis of the provisions relied upon by the opponent. This, coupled with the murkiness of the issues surrounding 1st Source's position as a secured creditor with a perfected security interest, puts this determination out of reach at the present. Because it remains possible that 1st Source is not subject to those set-offs and defenses, in which case there might be an indisputable amount owed, summary judgment cannot be granted to BNRV on Count I for account stated.

The question whether 1st Source is subject to set-offs and other defenses of BNRV also factors into 1st Source's other claims against BNRV. With respect to Count II's breach of contract claim, the disputes about the availability of those defenses impact issues of prior breach and computation of damages. The same questions of fact over the validity of BNRV's claim to offsets prevent summary judgment on the conversion claim

as well. For all these reasons, summary judgment cannot be granted for or against 1st Source or BNRV on any count.

**Summary Judgment Analysis – 1st Source v. M&T Bank**

The liability of M&T Bank presents a somewhat different picture. The predicate for 1st Source's standing to bring claims against M&T Bank is simpler. In August 2016, Evergreen executed an Assignment of Claims specific to the circumstances giving rise to this litigation. [DE 55-7.] In it, Evergreen assigns and transfers to 1st Source "any and all claims against M&T that are available to Evergreen as a result of BNRV's failure to pay for the Recreational Vehicles." [*Id.* at 1.]

M&T Bank seeks summary judgment on 1st Source's two claims against it – the promissory estoppel claim in Count III and the conversion claim in Count V. The motion is well taken because the legal theories 1st Source uses don't afford relief against the bank for its role in the parties' dealings. This is clear from 1st Source's opposition, which is light on the elements of the promissory estoppel and conversion causes of action, relying instead on the unfairness of having delivered 21 expensive vehicles that have not been paid for. Obviously that consideration alone is not sufficient to attach liability to a party whose involvement does not support it.

Promissory estoppel under Indiana law requires a promise of a definite and substantial nature that is made with the expectation that the promise will be relied on, reasonable reliance by the promisee, and a determination that only enforcement of the promise will avoid injustice. *Panhandle Eastern Pipe Line Company, L.P. v. Plummer*, No.

9

1:16-cv-02288-JMS-DLP, 2018 WL 1505013, *9 (S.D.Ind. March 27, 2018) (citing *Huber v. Hamilton*, 33 N.E.3d 1116, 1124 (Ind.Ct.App. 2015). The promissory estoppel claim here requires a promise to pay, and more than that, a clear, definite and unambiguous promise to pay. *Stone v. St. Vincent Hosp. and Health Care Center*, No. 1:11-cv-225-RLY-DML, 2012 WL 5844748, at *3 (S.D.Ind. Nov. 19, 2012) (citing *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001), and *Sembos v. Philips Components*, 376 F.3d 696, 704 (7th Cir. 2004). But the evidence does not support a conclusion that M&T Bank ever made such promises to pay for theRVs.

The course of dealing established by the evidence involved confirmations in the nature of purchase orders from BNRV to Evergreen, on the strength of which Evergreen would deliver vehicles that were (ordinarily) subsequently paid for after inspection by BNRV. The role of M&T's "approvals" was merely to confirm to both BNRV as buyer and Evergreen as seller that BNRV's line of credit with M&T was sufficient to cover the invoice price. 1st Source offers no evidence that supports any other interpretation of M&T's role as BNRV's floor plan lender. In the absence of a promise by M&T of payment, M&T cannot be liable to 1st Source on a promissory estoppel theory, and M&T is entitled to summary judgment on Count III.

The conversion claim against M&T fares no better. Because it is undisputed that M&T never possessed theRVs themselves, Count V asserts a conversion claim premised on M&T's possession of Certificates of Origin for theRVs, some or all of which certificates M&T allegedly subsequently transferred to persons or entities other than

Evergreen. [DE 30 at ¶¶50, 51.] But in response to M&T's motion, 1st Source does not dispute that the original Certificates of Origin were delivered to BNRV with the vehicles, and that M&T received only a copy of the Certificates of Origin. [DE 58 at 5, ¶¶15, 16; DE 63 at 2.] 1st Source fails to argue, much less support, that it (or Evergreen) was the owner of those *copies* of the Certificates of Origin, such that they could constitute property subject to conversion. In response to M&T's motion, 1st Source fails to refer to the Certificates of Origin at all, though they (rather than theRVs themselves) were the basis for the conversion claim as pled in the First Amended Complaint.

Instead, 1st Source argues in opposition that by "retaining the funds after conveying that the purchases were 'approved'," M&T has "exerted unauthorized control over the property of 1st Source Bank." [DE 63 at 11.] Even if M&T had the authority to make payments from BNRV's line of credit contrary to and without BNRV's approval (which of course it did not), M&T points out that under Indiana law, "[it] is well established that refusal to pay a debt will not generally support a conversion claim." *Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind.Ct.App. 2014). M&T is entitled to summary judgment on 1st Source's claim against it for conversion.

**Where We Go From Here**

Now that the summary judgment motions have been handled, it seems a good time to speak plainly about this litigation. It appears indisputable that BNRV ordered, received, and then didn't pay for the 21RVs. The questions that remain are whether 1st Source is entitled to recover (in place of Evergreen), and on what legal theory, and to

11

what extent the invoice amount is not the whole story because BNRV has off-setting defenses involving rebates, warranty expenditures, and other arguments for the diminished value of theRVs.

The case is set for a bench trial, and I will have the opportunity to address all the legal and factual issues at that time, unless the parties determine that a compromise and settlement of their claims serves their interests better than preparing for and engaging in a trial and any post-trial proceedings. A private mediation in January 2018 did not result in a settlement. Magistrate Judge Gotsch remains available to conduct a settlement conference if the parties so request.

On the parties' motion, the trial has been continued to October 15. The final pretrial conference is set for August 16. Because the analysis of critical UCC issues was poorly done by the parties in the summary judgment briefing, I anticipate requiring pretrial briefs addressing those matters in advance of trial. At or after the August 16 conference, the parties can expect an order setting forth those briefing requirements. At the final pretrial conference a schedule will also be set for the filing of proposed findings of fact and conclusions of law, motions in limine, witness lists, deposition designations and the like.

**ACCORDINGLY:**

Plaintiff 1st Source Bank's motion for summary judgment [DE 54] is DENIED.

The BNRV defendants' motion for summary judgment [DE59] is DENIED.

The request that the BNRV defendants' counterclaims be treated as defenses pursuant to Fed.R.Civ.P. 8(c)(2) [DE 65 at 3] is GRANTED, and all the counterclaims are dismissed without prejudice to their redesignation as defenses.

Defendant M&T Bank's motion for summary judgment [DE 57] is GRANTED.

**SO ORDERED** this 20th day of July, 2018.

                                                  /s/ Philip P. Simon
                                           UNITED STATES DISTRICT JUDGE