UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KR ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:16CV708-PPS |
| | ) |
| ZERTECK, INC., d/b/a Boat-N-RV Warehouse, et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

A consortium of six RV dealerships received 21 new RVs from a manufacturer, Evergreen Recreational Vehicles LLC, but never paid for them. This case is about how much, and to whom, the dealerships owe on those 21 RVs. The parties and I collectively refer to the defendants as "BNRV." Evergreen has never been a party to the case. Instead, the complaint was filed initially with 1st Source Bank as the plaintiff. 1st Source claimed that it stood in the shoes of Evergreen to collect on the debt because the bank had a "first priority blanket security interest" in all of Evergreen's assets, including its accounts receivable, derived from Evergreen's execution of a Loan and Security Agreement with 1st Source in 2009.

Eventually a second amended complaint was filed, in which KR Enterprises, Inc. was substituted as the party-plaintiff. [DE 111.] KR's complaint claims that on or about May 1, 2018, it "purchased a certain amended and restated promissory note executed by Evergreen in favor of 1st Source Bank," and that as part of that transaction, 1st Source

assigned to KR all of its interest in 1st Source's Loan and Security Agreement with Evergreen, as well as 1st Source Bank's interest in its claims against BNRV. [DE 111 at ¶11-14.] BNRV now seeks summary judgment by challenging KR's right to assert a claim to the proceeds of the sale of the 21 RVs.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat summary judgment by establishing a genuine dispute of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986). Instead, "summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial," which means "sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in [its] favor as to any issue for which it bears the burden of proof." *Grant*, 870 F.3d at 568.

There is no dispute that as of January 31, 2018, the so-called third promissory note was the only outstanding debt obligation of Evergreen to 1st Source under their 2009 Agreement. That Promissory Note, executed November 4, 2016, memorialized a loan of $1,083,174.83 by 1st Source to Evergreen, assigned Note Number 992210040333. [DE 121-3 at 46.] Richard Rozenboom, a Senior Vice President of 1st Source, gave a

30(b)(6) deposition in this case, and agreed in his deposition testimony that as of January 31, 2018, the third amendment to the promissory note was "the only promissory note that remained unpaid related to Evergreen's indebtedness to 1st Source Bank"under the 2009 Loan and Security Agreement. [DE 121-1 at 66-67.] The General Assignment by which 1st Source assigned to KR Enterprises its rights in the 2009 Agreement, as well as Loan No. 992210040333 and this pending litigation against BNRV, is dated May 1, 2018. [DE 122-18 at 1.]

With this as the background, here is how BNRV describes the issue posed by its summary judgment motion:

"whether the new Plaintiff KR Enterprises, Inc....has standing to exercise rights as a secured party so as to secure repayment under the 2009 Loan and Security Agreement between Evergreen...and the former Plaintiff 1st Source Bank..., when the balance of the last operative promissory note under that Agreement had a $0.00 balance for the two months immediately prior to the time that KR Enterprises ever obtained its purported secured party rights from 1st Source Bank?"

[DE 121 at 1.] BNRV believes it has a trump card obtained in discovery that somehow inoculates it from paying for the RVs that it received. In particular, BNRV tells me that 1st Source's records reflect a payment of $1,010,947.80 against the loan in March 2018 by KR Enterprises, which reduced the "Remaining Principal Balance" of the loan to $0.00. [DE 121-3 at 64.]

BNRV reasons that, because the note was paid off in March 2018, 1st Source "had no remaining rights as a secured party under the 2009 Land [sic] and Security Agreement to assign to KR Enterprises when it made the General Assignment on May

3

1, 2018." [DE 121 at 12.] By this way of thinking, the General Assignment conveyed no security interest in the note because the note had already been paid off, and as a result, BNRV is magically off the hook for paying for the 21 RVs that it received. In its memorandum in support of its motion, BNRV cites no legal authority in support of this analysis.

What BNRV repeatedly characterizes as a "payoff" of the loan [DE 121 at 2, 3, 8, 10, 11, 17, 18], KR Enterprises characterizes as its *purchase of* the promissory note. [DE 122 at 1.] This conception of what occurred is consistent with the allegations of KR Enterprises' complaint, as referenced above. Evidence cited by KR Enterprises supports this characterization. In the 30(b)(6) deposition, Rozenboom testified that beginning as far back as fall of 2017, he was in discussions with Kelly Rose, the guarantor of the note and part-owner and President of KR Enterprises (which was a part-owner of Evergreen), "to get him to buy the note from the bank" and "it was expected that he was going to purchase...the note and the indebtedness in short order." [DE 121-1 at 65.] Rose's deposition testimony corroborates that those discussions had occurred: "Mr. Rosenbloom [sic] and I had had a verbal conversation for me to purchase the note." [DE 122-13 at 5.] Rose further affirms that "on or before February 19th, 2018, [he] had discussions with Rick Rosenbloom [sic] about [Rose or his] assigns purchasing the promissory note and the security with regard to what is now this litigation with Boat-N-RVRV [sic]." [DE 122-13 at 7.]

Although a February 19, 2018 email from Rozenboom to Rose sets out figures referred to as the Evergreen "payoff as of Thursday, February 22," in the same email Rozenboom indicates that the bank "can assign the Evergreen Recreational Vehicles, LLC loan and security to you or your assign to collect." [DE 122-14 at 1.] That language supports the understanding that the figures were part of the negotiation of the sale price of the promissory note rather than an extinguishment of the debt. Rozenboom testified in the 30(b)(6) deposition that the bank's computations were "refer[red] to internally in the bank [as] a payoff, but it was not satisfying Evergreen's indebtedness to the bank." [DE 122-3 at 56.] The payment of $1,010,047.80 was made on March 6, 2019, but applied effective March 2, 2018 in the bank's books. [*Id*. at 59, 60.]

On March 6, the day the bank received the payment, Rozenboom indicated in an email that he "wanted to talk with [Rose] about the assignment of the indebtedness of Evergreen, given that he – his company had paid us that money...." [*Id*. at 64.] Even as he acknowledged receipt of the payment that day, Rozenboom writes: "Kelly, I would like to discuss the process of getting the Evergreen note assigned to you...." [DE 122-15 at 2.] In his 30(b)(6) deposition testimony, Rozenboom describes the transaction: "I had made an agreement with Kelly Rose to buy the indebtedness of the bank for him sending the money to the bank that – and I was going to assign that to him for his payment to the bank, purchasing the note." [DE 122-3 at 71-72.] Rozenboom felt that he had an obligation to provide KR Enterprises with an assignment of the note in exchange for the money that had been paid in March, and although the bank was "not able to

5

fulfill all of the transfer of the document at the time," they "finalized it in a correspondence in an assignment document on May 1, 2018." [*Id*. at 72.]

In BNRV's reply memorandum, it accuses KR Enterprises of attempting to create a genuine dispute of material fact "via contradictory and self-serving affidavits and testimony." [DE 124 at 2.] To begin with, there is nothing improper about a "self-serving" affidavit so long as it based on personal knowledge. The Seventh Circuit long ago put to rest the misconception to the contrary. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). In any event, I am not persuaded that BNRV's pejorative description fairly characterizes the evidence relied upon by KR Enterprises. Instead, I find that BNRV attempts some sleight-of-hand by repeatedly conflating the terms "agreement" and "assignment" to argue that because there was no assignment executed by March 6 there could be no agreement as of March 6. [DE 124 at 9, 10.] In my view, the evidence I reviewed above can be interpreted to support Rose's April 2019 affidavit (attacked by BNRV as "ginned-up"), in which he attests that "[i]n Fall 2017, I began discussing with Richard Rozenboom of 1st Source Bank the sale and purchase of the Evergreen Note," and that "[w]e agreed by February 2018 that I or one of my companies would purchase the Evergreen Note in exchange for assignment of the Evergreen Note to me or one of my companies." [DE 122-20 at 1.]

All of this evidence of record is more than enough to create a genuine dispute of fact as to whether the March payment paid off the debt, so that the May 1 assignment

6

did not convey to KR Enterprises any interest that can be pursued against BNRV in this action, or whether the conduct of 1st Source and KR Enterprises was instead the negotiation and consummation of KR Enterprises' purchase from 1st Source of the loan that KR Enterprises now sues BNRV to recover on.

A court considering a motion for summary judgment must view the facts, and inferences drawn from the facts, in the light most favorable to the non-moving party. *Fields v. Board of Education of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019); *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 410 (7th Cir. 2018). "Summary judgment is inappropriate when alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2007). "Under Indiana law, a determination of whether or not an assignment has been made focuses on the intent of the parties. Any actions or words which show an intention of transferring the chose in action to an assignee for valuable consideration are sufficient." *Crowel v. Admin. of Veterans' Affairs*, 699 F.2d 347, 352 (7th Cir. 1983). On the record before me, I cannot conclude as a matter of either fact or law that the March 2018 payment extinguished the debt at issue in this case. The motion for summary judgment will be denied.

ACCORDINGLY:

The BNRV defendants' Motion for Summary Judgment [DE 120] is DENIED.

At the telephonic status conference already set for August 29, 2019 at 1:00 p.m. Hammond/Central time, the court will discuss a date for the bench trial of the case.

**SO ORDERED**.

ENTERED: August 14, 2019.

                                               /s/ Philip P. Simon
                                               UNITED STATES DISTRICT JUDGE